IN THE

## UNITED STATES COURT OF APPEALS

### FOR THE FIFTH CIRCUIT

---

No. 13-20719

---



## RECORD EXCERPTS

**FOR THE PLAINTIFF-APPEALANT**

## TABLE OF CONTENTS

Affidavit of Dr. Michael J. Siciliano …...................................................13.20719 522-524

"Crime Alert Bulletin" …....................…........................................................13.20719 81

Plaintiff's Amended Response to Defendants' Motion for Rule 7 Response and Motion

to      Stay discovery …........................................................................ 13.20719 106-114

Plaintiff's Response to Defendants' Production of Plaintiff's Personnel File and

      Arguments on Defendants' Publication of Defamatory Information against

      Plaintiff .................................................................................... 13.20719 492-499

Transcript of Hearing on October 9, 2013 ….........................................13.20719 567-576

Plaintiff's Notice of Objection to the Opposing Counsels' Further Representation of

      Defendants Due to Conflict of Interest…...................................13.20719 507-508

Plaintiff's Notice of Objection to the Opposing Counsel's Testimony without First Hand

      Information …........................................................................... 13.20719 513-514

Plaintiff's Affidavit in Support of Clerk's Entry of Default …................13.20719 199-200

Order Denying Plaintiff's Motion for Default Judgment ….........................13.20719 206

EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| JINGPING XU,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF TEXAS M.D.<br>ANDERSON CANCER CENTER,<br>ARLENE PHILLIPS in her individual<br>and official capacities, and<br>GUILLERMINA LOZANO in her<br>individual and official capacities,<br><br>    Defendants. | <u>Case # 4:10-cv-03711</u><br><br><br><br>JURY TRIAL REQUESTED |

## AFFIDAVIT OF DR. MICHAEL J. SICILIANO

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, personally appeared Dr. Michael J. Siciliano, known to me to be the person whose signature appears below, and who, being first by me duly sworn on his oath, did depose and say:

1. I, Dr. Michael Siciliano, am more than twenty-one (21) years of age. I am fully competent to testify to the facts stated herein that are within my personal knowledge and are true and correct .

2. I was employed with The University of Texas MD Anderson Cancer Center (MD Anderson) for 38 years as Postdoctoral Fellow, Assistant Professor, Acting Chairman of the Department of Molecular Genetics (later re-named Department of Genetics), Chairman of the Faculty Senate and Chairman of the University of Texas Faculty Advisory Council, Associate Professor of Genetics, Professor of Genetics and finally as Kenneth D. Muller Professor of Tumor Genetics. I retired on August 31, 2008.

3. By August 2008, there was some important research work not yet completed in my laboratory for an exciting project on genetic predisposition to cancer which was supported by an NIH grant. The Department of Genetics agreed that my laboratory would remained open after my retirement date for completing the work.

4. Dr. Jingping Xu had been a most valuable employee of mine for 17 years. She had been the functional heart and soul of the laboratory and, with a pleasant personality, she was instrumental in creating a positive atmosphere in the laboratory. Jingping was innovative and

introduced various technological improvements to our work. She enjoyed consistently high annual performance evaluations throughout her employment, and received employee awards every year, including the Anderson Award for 2008, her final year of employment.

5. Dr. Xu would be available in September and October of 2008 to take on the completion of the research in my laboratory.

6. Therefore, the Departmental Administrative Manager Ms. Arlene Phillips, Dr. Jingping Xu, and myself met in August, 2008 before my retirement. All three parties agreed that Dr. Xu would not be terminated until October 28, 2008 in order for her to continue working on the research project. This agreement required that Dr. Xu forfeit over $5400 unused-vacation payout from her final year, and that the department continue paying her salary until October 28, 2008.

7. I left MD Anderson on my retirement date and went on a trip after the September Hurricane Ike.

8. When I came back to MD Anderson in mid-October, 2008, Dr. Xu had already been terminated by Arlene Phillips on October 8, 2008, twenty days before the agreed termination date in the three-party agreement (see 6 above), in which Arlene Phillips was a party acting for the Department of Genetics.

9. By the time of the early termination of Dr. Xu on October 8, 2008, there had not been sufficient time for Dr. Xu to complete the research work, and Dr. Xu's over $5400 vacation payout had already been forfeited.

10. On October 22, I received an e-mail from Ms. Phillips. It stated that Dr. Xu came to Ms. Phillips' office with a grievance letter about her loss of salary and the breaking of the agreement. Ms. Phillips then stated, "My concern is she appears to be unstable and I want you to know that I contacted the University of Texas Police Department and filed a police report so that she will not be allowed on premises."

11. On the same day, UT police issued a "Crime Alert Bulletin" with Dr. Xu's picture on it and a physical description, indicating that she was to be reported to the police if seen on campus.

12. I met with the Department Chairperson, Dr. Guillamina Lozano, about all this on or about November 3, 2008. She said she would conduct an audit on the financial considerations, but seemed embarrassed by the campus ban. I told Dr. Lozano how much I needed Dr. Xu to complete the research, that Dr. Xu, being the consummate professional, agreed to come in and help get the job done even though no longer being paid. Dr. Lozano agreed and said she could come in and work.

13. On or about November 7, 2008, Ms. Phillips advised UTPD, "[Dr. Xu] is allowed back on property for official business". On the same day, I informed Dr. Xu about Dr. Lozano's agreement. Dr. Xu came back to my laboratory to work as needed for the rest of November and early December, 2008.

14. On December 1, 2008, Ms. Phillips emailed Dr. Xu and stated: "the ban on your entering Basic Science Research Building (BSRB) has been lifted."

15. On December 3, 2008, Ms. Phillips emailed Dr. Xu and stated: "I observed you leaving the BSRB building", "You were informed on Monday, December 1, 2008 that you are to no longer enter the BSRB", "a police report has been filed on today (December 3, 2008) that completely restricts you from coming onto M.D. Anderson property."

16. Later that day (Dec. 3), police were in BSRB with the Crime Alert Bulletin with Dr. Xu's picture on it asking if anyone had seen this person and they were to report her presence immediately. Some were concerned being in the presence of a criminal. Others knew Dr. Xu well and called the Crime Alert Bulletin ridiculous and slanderous.

17. I gathered relevant facts and presented them to MD Anderson Human Resource and Faculty Senate in an email on December 9, 2008, and requested that, among other things, an apology be issued to Dr. Xu for the slanderous treatment of her, and that the ban against Dr. Xu be lifted so she could assist us in scoring the last of our data and closing down the laboratory.

18. No apology to Dr. Xu by the responsible parties was ever made. On December 15, 2008, David Taylor of MD Anderson Human Resource informed me of Dr. Lozano's decision, [Dr. Xu] "is not allowed to come back to the Department of Genetics as an employee regardless of funding source. She is not allowed back in the department in any capacity (compensated or otherwise)."

19. On or about December 16, 2008, David Taylor informed me that Dr. Lozano affirmed the above position, "Dr. Lozano will not allow [Dr. Xu] to be an employee of Genetics", and that, "Dr. Lozano wishes to maintain the ban."

20. The purported reason for banning Dr. Xu from going on campus was "liability", or "institutional safety", due to her no longer being an employee. Dr. Xu's past performance and constantly professional attitude suggests that there is no basis in fact for such a concern. Dr. Xu had gone on campus on agreements and for official business. In addition, even for casual or personal purposes, visiting of the institution and the department by non-employees, such as former employees, outside colleagues, friends and family of employees, was commonplace. No appointment or specific permission from the Department were required for these visits.

FURTHER AFFIANT SAYETH NAUGHT.

DR. MICHAEL J. SICILIANO, PH.D, D.SC. (hon)
Kenneth D. Muller Professor of Tumor Genetics (Retired)

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority on this the _____4th_____ day of September, 2013, to certify which witness my hand and official seal.

[Seal]

Notary Public, State of ~~TEXAS~~ New York

3

TERRY Z. LUCAS
Notary Public, State of New York
No. 02LU5015548
Qualified in Suffolk County
Commission Expires July 23, 2017

*Exhibit A*

# The University of Texas at Houston Police Department

*Leadership*      *Professionalism*      *Innovation*      *Integrity*      *Service*

## Crime Alert Bulletin – Suspicious Person
### Internal Police Personnel Only

On Wednesday, October 22, 2008 at 10:10 a.m., UT Police responded to a report of a suspicious activity at the M. D. Anderson, BSRB regarding an ex-M. D. Anderson employee.

The suspicious person was identified as;

> **NAME:** Jingping Xu
> **RACE:** Asian
> **SEX:** female
> **HEIGHT:** Unknown
> **WEIGHT:** Unknown
> **AGE:** 44



UT Police determined that Xu had no official business on property.

If Xu is seen on UT Property, contact UT Police at 713-792-2890.

Visit UT Police on the web for additional information and security tips.
*http://www.mdanderson.org/utpd/*

IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

APR 2 2 2011

David J. Bradley, Clerk of Court

JINGPING XU,

      Plaintiff,

v.

THE UNIVERSITY OF TEXAS M.D.
ANDERSON CANCER CENTER, ARLENE
PHILLIPS in her individual and official
capacities, and GUILLERMINA LOZANO
in her individual and official capacities,

      Defendants.

C.A. No. __10-3711__

## PLAINTIFF'S AMENDED RESPONSE TO DEFENDANTS' MOTION FOR RULE 7 RESPONSE AND MOTION TO STAY DISCOVERY

TO THE HONORABLE JUDGE KEITH ELLISON:

      COMES NOW Plaintiff Jingping Xu, with her Amended Response to Defendants'

Motion for Rule 7 Response and Motion to Stay Discovery.

### 1. Introduction

      Defendants Phillips ("Phillips") and Lozano ("Lozano") allege that they are entitled to

qualified immunity from all claims brought against them in their official and individual

capacities.  Qualified immunity shields state officials from liability unless their conduct violates

"clearly established statutory or constitutional rights of which a reasonable person would have

known." *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986), see *Harlow v. Fiztgerald*, 457

U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396(1982).  Plaintiff alleges the conduct of

Phillips and Lozano does not afford them qualified immunity.  Heightened pleadings with

Factual Details below demonstrated the defeat of their qualified immunity.

## 2. Heightened Pleading

Phillips and Lozano further allege that Plaintiff must allege specific conduct giving rise to a constitutional violation.

The heightened pleading requirement requires Plaintiff to allege particular facts forming the basis of her claim, including those preventing Phillips and Lozano from successfully maintaining a qualified immunity defense. *Wicks v. Mississippi State Employment Serve.*, 41 F. 3d 991, 995 (5th Cir. 1995), citing to *Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985). In order to state a cause of action under §1983 Plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. *Id.*, *see Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). In *Woods*, the plaintiff argued that four government officials were responsible for the acts of all the officials below them that directly affected him. The court held that the plaintiff failed to allege any act on the part of the defendants which contributed to the violation of his constitutional rights. However, in *Anderson v. Pasadena Indep. Sch. Dist., et al.,* 184 F. 3d 439, 443 (5th Cir. 1999), the plaintiff sought to establish each defendant's responsibility for his or her own actions, and therefore, the court held that the complaint met the factual specificity required to overcome the defense of qualified immunity. Like the plaintiff in *Anderson*, Plaintiff establishes Phillips' and Lozano's responsibility for their actions in this Response in additional to her original complaint.

## 3. Factual Details

A complaint must "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Wicks,* 41 F. 3d at 996, citing *Elliott*, 751 F.2d at 1473.

Plaintiff hereby incorporates into her pleadings the following Factual Details of Phillips' and Lozano's actions and particularity the basis for the claim.

3.1. On October 8, 2008, Phillips and Lozano prematurely and forcefully ended Plaintiff's employment with The University of Texas MD Anderson Cancer Center ("UT") in their breaching of an agreement with Plaintiff:

3.1.1. In August, 2008, Plaintiff's former supervisor Dr. Michael Siciliano ("Dr. Siciliano"), Phillips (as Department Manager), and Plaintiff made a three-way agreement.

3.1.2. The agreement entitled Plaintiff to continue working in, and getting pay from, UT Department of Genetics after Dr. Siciliano's retirement on August 31, 2008.

3.1.3. The agreement specified Plaintiff's termination date as October 28, 2008.

3.1.4. Phillips, at the instruction of Lozano (as Department Chair), prematurely terminated Plaintiff's employment on October 8, 2008, breaching the agreement.

3.1.5. The termination was forceful because Phillips ordered Plaintiff to turn in office keys and ID badge on October 8, 2008.

3.1.6. Phillips also had closed Plaintiff's work email account without warning one day earlier on October 7, 2008.

3.1.7. Lozano ignored Plaintiff's numerous requests for correcting Phillips' above wrongdoings.

3.2. On October 21, 2008, Plaintiff went to UT with a grievance letter against Phillips.

3.3. Plaintiff gave the letter to Phillips peacefully.

3.4. Phillips called UT Police Department ("UT Police") after Plaintiff had left.

13-20719.108

3.5. Based on Phillips' report, UT Police issued a Crime Alert Bulletin with Plaintiff's photo and physical descriptions (Exhibit A), designating Plaintiff as a "suspicious person" to be reported to the UT Police immediately if seen on campus ("UT Ban").

3.6. UT Ban prohibits Plaintiff from going to any property of The University of Texas, a public-owned university. UT Ban also states that Plaintiff "has no official business on property", a false statement to harm Plaintiff because Plaintiff had been an adjunct faculty member of The University of Texas, with academic duties to carry out on property. These duties, and those of Plaintiff's as an affiliated research fellow later, were severely undermined due to UT ban.

3.7. In November, 2008, Dr. Siciliano requested Lozano to allow Plaintiff back to work in the Basic Science Research Building (BSRB) of UT.

3.8. Lozano agreed to the request.

3.10. On December 1, 2008, Phillips emailed Plaintiff and confirmed that the restriction against Plaintiff to go to BSRB had been lifted.

3.11. On December 3, 2008, Phillips saw Plaintiff going out of BSRB.

3.12. Phillips called UT Police to report Plaintiff for going to BSRB.

3.13. UT Police displayed the said Crime Alert Bulletin to employees around BSRB and distributed it.

3.14. UT Police asked Plaintiff's former colleagues and other employees to report Plaintiff if seen on campus.

3.15. On the same day, Plaintiff strongly protested the public UT Police actions against her caused by Phillips, and requested Lozano, Phillips, UT to take down the Crime Alert Bulletin and clear its damaging influences against Plaintiff.

3.16. Lozano, Phillips, UT ignored Plaintiff's request.

4

3.17. In December, 2008, in her communications to UT Human Resource Department, Lozano insisted on keeping in effect the UT Ban against Plaintiff.

3.18. Lozano further banned Plaintiff from being hired back to the UT Department of Genetics "on any capacity."

3.19. From October to December, 2009, in their responses to Plaintiff's defamation suit at Harris County District Court #125, Defendants, including Lozano and Phillips, claimed sovereign immunity and refused to correct their above wrongdoings against Plaintiff.

3.20. In March, 2010, Plaintiff sent a formal request to UT, Lozano, and Phillips for a Name Clearing Hearing and for remedies to resolve past damages and to prevent future damages to Plaintiff.

3.21. Defendants, including Lozano and Phillips, ignored Plaintiff's request.

3.22. UT Ban has stayed effective for over two years to date, which, along with defamatory information in plaintiff's file, has done and continues to do great harm to Plaintiff.

3.23. Citing UT Ban, UT Police specifically told Plaintiff that she is not allowed to take job interviews, nor allowed to attend seminars, workshops and other activities, on any UT property.

3.24. Plaintiff's requests for permission to go to these or other activities in UT, including those as part of Plaintiff's professional/academic duties, were ignored, denied, or restricted.  On one occasion, Plaintiff was threatened, "We (UT) WILL arrest you (Plaintiff) if you show up."

3.25. As a result of UT Ban, Plaintiff has lost a national training grant (a fellowship awarded from the National Institute of Health) for not being able to fulfill the grant requirements, including academic activities and duties on UT property.

3.26. As a more general result of being deprived of her liberty interest in seeking new employment in UT, and seeking employment anywhere without the burden of an unjustified label of infamy, Plaintiff has suffered unemployment/under-employment since Defendants' actions against her.

3.27. Defendants, including Lozano and Phillips, denied Plaintiff due process in each incidence of their above violations, or causing of violations, of Plaintiff's constitutional rights, namely, First Amendment retaliation, deprivation of liberty, and equal protection violations.

By incorporating the above Factual Details, Plaintiff has clearly demonstrated that Defendants Phillips and Lozano were personally involved in the constitutional violations against Plaintiff. Moreover, Plaintiff has alleged particular facts forming the basis of her claims, including those facts which prevent Defendants from successfully maintaining a qualified immunity defense.

Based on the above actions, Plaintiff identified Phillips and Lozano who were either personally involved in the constitutional violations or whose acts were causally connected to the constitutional violations alleged. Moreover, Plaintiff established responsibility of each of the two individual defendants, Phillips and Lozano, for their own actions, and therefore, Plaintiff's pleading meets the factual specificity required to overcome the defense of qualified immunity. Furthermore, Plaintiff cited conduct (or specific omissions) that causally link Phillips and Lozano to participation in the wrong alleged. Therefore, Phillips' and Lozano's involvement has been clearly demonstrated in the involvement of the events.

### Defeat of Defendants' Qualified Immunity

Qualified immunity protects governmental employees who are acting within their discretionary authority if their actions do not violate clearly-established statutory or

6

constitutional rights of which a reasonable person would have known. Anderson v. Creighton,

483 U.S. 635, 107 S.Ct. 3034 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727,

2738 (1982). The facts presented in Plaintiff's pleadings, including the Factual Details, clearly

demonstrated that Phillips and Lozano's actions against Plaintiff were not within their

discretionary authority, and they violated clearly-established constitutional rights of Plaintiff,

namely, First Amendment rights of freedom of speech/petition, due process rights, and equal

protection rights. These constitutional rights have been clearly established since the eighteenth

century. Phillips and Lozano's discretionary authority did not authorize them to inflict and

maintain police actions against Plaintiff for peacefully filing a grievance against them. They

acted in retaliation against Plaintiff and in conspiracy, violating First Amendment freedom of

speech rights. Their actions caused deprivation of Plaintiff's liberty interest without affording

Plaintiff any due process, violating the Fourteenth Amendment due process clause. Other former

employees, and other citizens in general, have been allowed to visit the campus, seek new

employment, and be hired back to the department. By using police actions to deprive Plaintiff's

liberty to the same, Defendants violated Plaintiff's Equal Protection rights.

Defendants admitted that for their qualified immunity not to be defeated, they should

have acted "in an objectively reasonable manner." (Defendant's Motion for Rule 7 Response and

Motion for Stay Discovery, II.A.). However, Phillips' and Lozano's actions were not objectively

reasonable. Phillips did not act in an objectively reasonable manner when she called UT Police

and made a false report on Plaintiff on October 22, 2008 after Plaintiff had peacefully delivered

to her a grievance letter (Factual Details listed above, 3.4., 3.5). This violated Plaintiff's

constitutional rights of freedom of speech and caused deprivation of Plaintiff's constitutionally-

protected liberty without due process, a violation of Fourteenth Amendment rights. Phillips acted

not only unreasonably but also illogically when she called UT Police to report Plaintiff for a

second time on December 3, 2008 for Plaintiff's going to UT BSRS (Factual Details 3.12) after

she had told Plaintiff that the restriction against Plaintiff going to BSRB had been lifted on

December 1, 2008 (Factual Details 3.13.) This caused a new and elevated round of police

actions against Plaintiff and further deprivation of Plaintiff's liberty without due process, another

violation of Fourteenth Amendment rights.

Lozano did not act objectively reasonably, nor within her discretionary authority, when

she supported and/or instructed Phillips' wrongful actions against Plaintiff, insisted on

maintaining unwarranted police actions against Plaintiff (Factual Details 3.17), banned Plaintiff

from being hired back to UT Department of Genetics (Factual Details 3.18), and omitted actions

to correct the wrong doings when Plaintiff specifically requested the corrections (Factual Details

3.1.7, 3.16). Lozano also acted unreasonably and illogically in using police actions against

Plaintiff for going to BSRB (Factual Details 3.17) after she had agreed to Plaintiff doing so

(Factual Details 3.8.) in order to work for her Department. Lozano's above actions deprived

Plaintiff's constitutionally protected liberty interests without due process.

In summary, together Phillips and Lozano acted in conspiracy to retaliate against Plaintiff

and violated her constitutionally-protected rights of freedom of speech/freedom of petition (filing

a grievance), liberty interest of future employment opportunity without the burden of an

unjustified label of infamy, liberty of accessing a public university's campuses, rights to visit,

perform official duties, and seek employment in a public university, and rights to not having

defamatory information published against her and kept in her file without due process. Phillips

and Lozano repeatedly acted unreasonably and in direct violation of Plaintiff's constitutional due

process rights when they denied Plaintiff due process in each incidence of their violations cited

above and in ignoring Plaintiff's formal request for a Name Clearing Hearing (Factual Details 3.20-3.21).

### State of Discovery

Phillips and Lozano request that this Court order all discovery in this action be stayed pending resolution of the qualified immunity issue.

The district court can allow discovery if the "[Plaintiff has] supported [her] claim with sufficient precision and factual specificity to raise a genuine issue as to the legality of defendant's conduct at the time of the alleged acts." *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc). Plaintiff has met this standard.

Moreover, Phillips and Lozano, aside from being Defendants, are witnesses in the matter of conduct related to the qualified immunity issue and other claims which the Plaintiff has brought before this Court. Specifically, Phillips' and Lozano's testimony is relevant to Plaintiff's claims against Defendants. Denying Plaintiff the opportunity to depose Phillips and Lozano regarding the intertwined and inherently related facts will only delay the discovery process. No delay is warranted and Plaintiff should be able to proceed with discovery.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Honorable Court deny Defendants Phillips and Lozano's Motion to Stay Discovery.

Respectfully submitted,

Jingping Xu
PO Box 541321
Houston, TX 77254

9

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
 2                   HOUSTON DIVISION

 3

 4   JINPING XU                    *      10-CV-3711
                                   *      Houston, Texas
 5   VS.                           *
                                   *      2:34 p.m.
 6   THE UNIVERSITY OF TEXAS       *      October 9, 2013
     M.D. ANDERSON CANCER
 7   CENTER,  et al

 8                        CONFERENCE

 9

10        BEFORE THE HONORABLE KEITH P. ELLISON
              UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   FOR THE PLAINTIFF:
     (Pro Se)
14   Jinping Xu
     P.O. Box 19104
15   Houston, Texas 77224
     832.545.6672
16

17   FOR THE DEFENDANT:
     Jason T. Contreras
18   OFFICE OF THE ATTORNEY GENERAL
     P.O. BOX 12548
19   Capitol Station
     Austin, Texas 78711-2548
20   512.463.2120

21

22   Court Reporter:
     Johnny C. Sanchez, RPR, RMR, CRR
23   515 Rusk, #8004
     Houston, Texas 77002
24   713.250.5581

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-assisted transcription.
```

1          THE COURT:  Okay.  We'll take appearances of

2    counsel, or are appearances of parties as the case may be.

3    Xu versus UT M.D. Anderson.  You're representing yourself?

4          MS. XU:  Yes.

02:34:27    5          THE COURT:  Welcome.  For the defendants?

6          MR. CONTRERAS:  Good afternoon, Your Honor.

7    Jason Contreras on behalf of defendants.

8          THE COURT:  Okay.  I received two new documents

9    from plaintiff this morning.  I haven't received a

02:34:44  10    response.  Would you like to respond to those.  Did you get

11    the new filings this morning?

12          MR. CONTRERAS:  Yes, Your Honor.  I just found

13    out that our office received those.  I've been out of town,

14    but we got those, I think, late yesterday afternoon.  And

02:34:57  15    they were just filed yesterday.  So we haven't had a chance

16    to respond to those yet, Your Honor.

17          THE COURT:  Well, on the issue of conflict of

18    interest, I would assume that's something that comes up a

19    lot, isn't it, in your office?

02:35:10  20          MR. CONTRERAS:  It's come up before, Your

21    Honor, but there's certainly no -- well, I don't think

22    that's even appropriate for the plaintiff to raise for

23    purposes of today.  But, yes, those issues do come up from

24    time to time.  Other times there's no conflict of interest,

02:35:26  25    and there's certainly no reason why the Attorney General's

Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com

1  Office can't represent two employees of the same state

2  agency in a lawsuit, much less when we're dealing with the

3  open records division, which is a completely separate

4  division from the general litigation division, whatever

02:35:46    5  issues that the plaintiff might have with our open records

6  division of the AG's Office is completely separate from

7  ongoing litigation determinations that are made from --

8          THE COURT:  So there's already a Chinese Wall,

9  is what you're saying, then?

02:36:01    10         MR. CONTRERAS:  Correct, Your Honor.  We have

11  no part in that process.  I'm just involved in the

12  litigation as the attorney.

13         THE COURT:  Okay.  On your second point, I'm

14  sorry, the -- I don't think you do provide a reason that we

02:36:15    15  need to discount Mr. Taylor's affidavit.  I think it's

16  accepted.

17         MS. XU:  May I say something?

18         THE COURT:  I understand there are arguments

19  about credibility.  Yes.  Go ahead.

02:36:30    20         MS. XU:  The Attorney General himself is

21  counsel office case.  Any -- out of any division in his

22  office, I believe, will have a conflict of interest.

23         THE COURT:  Is there any authority for that?

24  Is there any precedent for that?  I'm aware of none.

02:36:49    25         MS. XU:  Yes.  The American Bar Association

13-20719.569

1  band against this kind of representation once there's a

2  conflict of interest.

3         THE COURT:  Who does?

4         MS. XU:  The American Bar Association --

02:37:02    5  association of bar.

6         THE COURT:  The bar?

7         MS. XU:  I cite it in my filing.

8         MR. CONTRERAS:  Also, just to point out, Judge,

9  there is nothing in the record that would even indicate

02:37:17   10  that there is any kind of conflict of interest.

11         MS. XU:  Objection.  That's irrelevant to this

12  issue.

13         MR. CONTRERAS:  She's raising it, Judge.  How

14  can I not respond with the argument that she's presuming

02:37:26   15  without any information or evidence in the record that

16  there does exist conflict.  And so, that presumption itself

17  is erroneous for her to claim --

18         THE COURT:  All right.  I understand.

19         MS. XU:  That will make it strange so why do

02:37:39   20  you not want to provide this information?

21         THE COURT:  Well, that's a entirely different

22  question.

23         The reason we called this hearing was to

24  deal with what's left of this lawsuit, which is that

02:37:55   25  defendants allegedly published stigmatizing information by

1 placing it or causing it to be placed in the plaintiff's
2 personnel file.

3          The last hearing we discovered the plaintiff
4 had never seen her own personnel file.  So that was made
02:38:17   5 available to her.  My concern is that I don't think you can
6 adequately plead such a claim, "stigma plus claim," as is
7 referred to, because you don't argue that either of the
8 defendant personally, either defendant personally placed
9 stigmatizing materials in your file, or intentionally
02:38:50   10 caused others to do so.  And I do think that's required.

11          Also, we had trouble finding the defamatory
12 documents in your file, including the police reports, the
13 crime alert bulletin, the statement from Dr. Lozano --
14 L-O-Z-A-N-O.  We didn't find that in your personnel file.
02:39:15   15 Do you think that's in your file?

16          MS. XU:  The issue I raised in my filing is not
17 only the personnel file is the public record, but the
18 police reports on the document maintained by M.D. Anderson
19 related to this case including personal notes and e-mails
02:39:34   20 between the defendants also copy record.  Those are all
21 accessible to the public upon request.  Those other
22 material certainly have lots of defamatory information
23 against me, and I didn't receive any due process for them
24 to maintain those information.

02:39:58   25          THE COURT:  Do you want to respond to that?

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

1           MR. CONTRERAS:  Your Honor, the issue here is

2  whether any of that alleged stigmatizing information was

3  personally placed in her personnel file.  So we're not

4  talking about any other file, other than the personnel file

02:40:10   5  itself.

6           And as we've shown through the file, none of

7  the stigmatizing information is contained therein.  We have

8  affidavits authenticating it.  And so, for those reasons,

9  in addition to the fact that plaintiff herself has failed

02:40:24   10  to plead that either Dr. Lozano or Mrs. Phillips personally

11  placed any information in her personnel file.  There's

12  simply no basis for the plaintiff to proceed on her claims.

13           MS. XU:  Again, I reiterate that not only the

14  personnel file, but also the added documents belong to

02:40:43   15  public record and accessible to the public therefore by

16  nature is considered published.

17           And, also, the apposing counsel do not have

18  any firsthand information.  All the firsthand information

19  comes from the defendants or other associates.  So their

02:41:02   20  argument is not reliable.  They only base on the secondhand

21  information, and also the affidavits as I point out in many

22  of my files that those affidavits have lots of untrue

23  information in it.  I also just file a Dr. Lozano's

24  affidavit.

02:41:22   25           THE COURT:  Hand it to Mrs. Loewe, if you

1 would.

2            MS. XU:  We demonstrate many of those arguments

3 and statements in defendants --

4            THE COURT:  Did you give copies of this to the

02:41:44    5 other side?

6            MS. XU:  Yes.

7            THE COURT:  Okay.

8            MS. XU:  So that testify in Dr. Lozano's

9 affidavit, with all the stats.  And it say that the other

02:42:00   10 side's argument, even the so-called firsthand information

11 in those affidavits provided by the defendant side are not

12 reliable.  So cannot be used as for the consideration of

13 their motion for dismiss.

14            THE COURT:  Well --

02:42:28   15            MS. XU:  Another point I want to raise is in a

16 case proceed plaintiff, is my understanding is a motion to

17 dismiss can only be granted when there's no sets of facts

18 that supporting plaintiff's claim can be proved beyond --

19            THE COURT:  I think that's where we are,

02:42:49   20 because I don't think you have alleged, even, that the

21 defendant's personally and intentionally placed

22 stigmatizing information in the file.

23            MS. XU:  In other document file for sure.  In

24 the e-mails, all those are documented with -- in the police

02:43:12   25 reports documents, including e-mail accounts.

1          THE COURT:  I think the most you can say is

2     that defendants might have known that the reports and

3     statements they made would end up in your personnel file.

4     That's not what's necessary under this cause of action.  It

02:43:26    5     has to be that defendants personally and intentionally

6     placed stigmatizing information in the file.

7          MS. XU:  My argument point also is even though

8     the production they send of the personnel file without

9     defamatory information, that does not mean there never has

02:43:51   10     been because from my personal knowledge, I know that there

11     are -- there was information in the file cited by their own

12     director.  Now it's not there anymore.  Based on those

13     facts that they told so many untrue statements in their

14     affidavit, it's doubtful that the production was complete

02:44:11   15     and authentic.  And the way to authenticate it with the

16     defendants' affidavit does not support because of the under

17     the reliability of it because of all other untrue

18     statements they make.

19          MR. CONTRERAS:  Judge, whatever arguments and

02:44:30   20     allegations that were made outside of her pleading, the

21     live pleadings, is simply not relevant to her meeting her

22     burden.

23          THE COURT:  I know that.  I know that.

24          MR. CONTRERAS:  And also the fact that we've

02:44:42   25     turned over the personnel file, we have them, and the

1 bottom line is the plaintiff is trying to suggest that

2 there's some documents in some other files or somewhere

3 else within the M.D. Anderson that are stigmatizing when

4 the Court has already properly limited this to the question

02:44:59   5 of whether any of the information that was in the personnel

6 file, nowhere else.  And we have shown that is simply not

7 true, and plaintiff has not met her burden to plead a

8 proper cause of action on the last remaining claim, Your

9 Honor.

02:45:24   10          MS. XU:  My response to that is, again, that

11 just mainly other files is considered public record, so

12 it's appropriate to include in those as consideration in

13 terms of publication.  If it's public record, it's by

14 nature published because anybody can get it.

02:45:40   15          THE COURT:  But this is new.  You didn't have

16 this in your original --

17          MS. XU:  Yes, I did, in my affidavit.

18 Affidavit of this period of their affidavits in some other

19 filings that I pointed out that all those -- other

02:45:56   20 information are also public record.

21          MR. CONTRERAS:  Your Honor, I believe the

22 plaintiff has waived those arguments, because after the

23 Court issued its order on the fourth motion to dismiss,

24 plaintiff didn't dispute the order, she didn't challenge it

02:46:11   25 or file a motion to reconsider any of the law or the

1  Court's holdings.  And now she's raising this for the first

2  time, you know, on the eleventh hour of our fifth motion.

3  And I believe that she's waived these arguments because she

4  didn't raise these before, and they're certainly not pled

02:46:30    5  in her live pleading either.

6          So I think all these arguments are just

7  untimely, and she waived them because she never challenged

8  the Court's order which limited her claim to the question

9  of whether or not any stigmatizing information was placed

02:46:48    10  in her personnel file.  And that was -- I don't know how

11  long that was, that it was months ago when that order came

12  down and plaintiff never disputed it or challenged it or

13  requested that the Court reexamine that determination.

14          So I think all those arguments at this time

02:47:01    15  have been waived.

16          MS. XU:  I object that I never raised these

17  points or dispute arguments.  I did dispute those arguments

18  in my affidavit of dispute, which I filed previously.

19  Weeks ago, at least.

02:47:18    20          THE COURT:  You're a very impressive person.

21          MS. XU:  Thank you.

22          THE COURT:  And I feel badly that this hasn't

23  turn out right for you, but I'm going to have to dismiss

24  the remaining claim.  I'm very sorry.

02:47:36    25          **(Recessed at 2:47 p.m.)**

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

SEP 1 1 2013

David J. Bradley, Clerk of Court

| | |
|---|---|
| JINGPING XU, <br><br> Plaintiff, <br><br> v. <br><br> THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, ARLENE PHILLIPS in her individual and official capacities, and GUILLERMINA LOZANO in her individual and official capacities, <br><br> Defendants. | Case # 4:10-cv-03711 <br><br><br><br> JURY TRIAL REQUESTED |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' PRODUCTION OF PLAINTIFF'S PERSONNEL FILE AND ARGUMENTS ON DEFENDANTS' PUBLICATION OF DEFAMATORY INFORMATION AGAINST PLAINTIFF

COMES NOW Plaintiff and files this her Response to Defendants' Production of Plaintiff's Personnel File and Arguments on Defendants' Publication of Defamatory Information Against Plaintiff. In support, Plaintiff respectfully offers the following for the consideration by the Court.

### I. Background

Plaintiff brings a claim under 42 U.S.C. § 1983, First Amendment and Fourteenth Amendment of US Constitution against Defendants The University of Texas MD Anderson Cancer Center Arlene Phillips ("Phillips") in her individual and official capacities, and Guillermina Lozano ("Lozano") in her individual and official capacities for violating Plaintiff's rights under the aforementioned laws. The Court dismissed claims against UT MD Anderson and against the individual Defendants in their official capacities. (Doc. No. 29, February 22,

2012 Memorandum and Order.) On October 1, 2012, the Court denied Defendants' Second and Third Motions to Dismiss, and directed the parties to confer about the remaining dates on the scheduling order. Defendants, however, filed their Fourth and Fifth Motions to Dismiss, denying any responsibility for the defamatory and damaging treatments of Plaintiff. In June, 2013, Defendants requested a settlement offer from Plaintiff. Plaintiff, acknowleging and welcome the positivity of Defendants' guesture, prepared with great sincerety a settlement offer covering all related issues, with the attempt of resolving all issues once and for all. The offer was made with greatly detailed, elaborative explanations, point-by-point reasoning, and conservative estimations of the damages. Plaintiff also offered flexibility on the settlement terms and invited a counter offer. However, Defendants declined Plaintiff's good faith offer outright, without a formal response. On or about August 20, 2013, Plaintiff made a second settlement offer pertaining to only issues currently in Court, as Defendants claimed that Plaintiff's settlement offer should have been. The second settlement offer reduced non monetary demands to a minimal, and demands for monetary damages to only a small portion of the original offer. Plaintiff also again invited a counter offer that Defendants deemed reasonable for Plaintiff to consider. However, Defendants completely ignored Plaintiff's second settlement offer, showing no sincerity in their request for a settlement. On August 21, 2013, a hearing on Defendants' Fifth Motion to Dismiss was held. Defendant again completely denied any responsibility for their wrongful actions. The Court ordered Defendants to produce Plaintiff's personnel file under seal. Plaintiff hereby files this response and arguments.

## II. Response and Arguments

### A. The Produced Personnel File May Not Be True and Complete

1. A piece of information known to be in Plaintiff's Personnel File is not included in the production.

On December 3, 2008, Plaintiff contacted MD Anderson Human Resource to protest against Defendant Arlene Phillips' second false police report and the resulting police actions against Plaintiff on the same day. Ms. Sheri Brownlow, MD Anderson Human Resource supervisor, cited from Plaintiff's personnel file that Defendant Phillips reported being "threatened" by Plaintiff. This information was totally untrue and defamatory. Defendants' production of Plaintiff's personnel file (Doc. No. 65), however, has omitted this information

previously cited from Plaintiff's personnel file.

2. Defendants have in fact shown untruthful behaviors in this Cause by repeatedly giving untrue statements to the Honorable Court in opposition to facts known to them.

A number of the untrue statements were rebutted in Plaintiff's Rebuttal Affidavit (Doc. No. 62) and in August 21, 2013's hearing of this Cause. Plaintiff hereby incorporates those rebuttals for the purpose of this section. However, the word "false" in the phrase "false statements" in Plaintiff's rebuttals was an under-statement. In Defendants' multiple statements in their Affidavits, it was using untrue statements in apparent attempt to mislead, under oath.

Those untrue statements showed the Defendants intention to mislead the Court because they were made to contradict facts known to them about the often key elements of this suit.. For example, a key element in this suit is the banning of rehiring Plaintiff. In her obvious attempt to contradict the facts related to this key element, Defendant Lozano stated in the Affidavit of Dr. Guillermina Lozano that "[Plaintiff] could not be re-hired by the Department of Genetics is because no other faculty members in the Department had the funds to re-hire her", which was in direct opposition to facts known to Lozano at the time of her sworn Affidavit. The aforementioned known facts were that Defendant Lozano herself had ordered Human Resource, "[Plaintiff] is not allowed to come back to the Department of Genetics as an employee regardless of funding source", and that Defendant Lozano further affirmed that she "will not allow [Plaintiff] to be an employee of Genetics" (Doc. No. 62).

For another example, in the August 21, 2013 hearing of this Cause, the key information for the Court to understand the legitimacy of Plaintiff being on MD Anderson premises after October 8, 2008, and therefore the illegitimacy of Defendants actions against Plaintiff, was the two agreements Defendants made with Plaintiff and Dr. Micheal Siciliano for Plaintiff to finish some work on premises. (Doc. No. 8, Exhibit B; Doc. No. 62). Given these two agreements being true, it would be clear to the Court that Defendants' story about Plaintiff going on MD Anderson premises "without any legitimate reason" has to be untrue. However, Defendants denied the facts the they had made these agreements, facts inargurably known to them at the time of their denying of these facts in the Court.

Plaintiff's Rebuttal Affidavit (Doc. No. 62), although not exhausting, has demonstrated the extent to which Defendants have engaged in giving untrue statements to the Court in this Cause.

3

3.  David Taylor of MD Anderson Human Resource changed page count of Plaintiff's personnel file between two affidavits.

A second Affidavit of David Taylor (Doc No. 66) changed the total page count of Plaintiff's personnel file to 229 from 227 in his first Affidavit of David Taylor.  He claimed that it was because two pages were unaccounted for in his first Affidavit.  However, it is hard to believe that a Senior Human Resource officer would left pages unaccounted for in a sworn affidavit made to the Court.  Given the untruthful behaviors that affiants of Defendants' have demonstrated, this discrepancy of page count may be a sign of manipulation of the file that Defendants produced, possibly, by replacing or withholding some key information that reveals their wrongful actions.

4. MD Anderson has in fact unlawfully withheld public information concerning Plaintiff in apparent attempts of coverup.

In March, 2012, Ms. Leanne Ypma requested from MD Anderson copies of police report No. 200810220096 related to actions against Plaintiff, its supplemental reports, and other related information.  MD Anderson provided the initial report, but withheld any supplemental reports and other related information.  Later in the month, Ms. Ypma sent an additional request for Police Report No. 200810220096s2 and its supplemental reports and other related information.  MD Anderson completely ignored this second request.  Defendants later claimed to this Court that releasing the first report was a "mistake", in an obvious attempt to cover up the fact that the defamatory information against Plaintiff in these reports is public information.  Police reports, initial and supplemental, and related non-exampted information are public information subject to disclosure by law upon request (Texas Government Code Section 552).  The Public Information Act prohibits a governmental body from withholding public information from any member of the public, and section 552.007 prohibits a governmental body from selectively disclosing information that is not confidential by law.  MD Anderson's past behaviors of selective disclosure and withholding public information against the law, as cited above, further making the integrity of Defendants' production of Plaintiff's personnel file questionable.

At the end of the August 21, 2013, the Court correctly indicated that an action of producing an untrue personnel file is a crime warranting prosecution by the District Attorney.  Giving untrue information in affidavits and other sworn court proceedings is also a crime.

However, Defendants' conducts in the course of this Cause, such as their numerous intentional untrue statements in various sworn Affidavits, and their withholding public information against the Public Information Act in their apparant coverup attempts, have repeatedly shown that Defendants are capable of conducting such unlawful actions. Plaintiff urges investigations into the truthfulness of the personnel file as well as other key proceedings that Defendants have provided to the Court, before a judgement is made based on these information and the file.

### B. Defendants' Publications of Defamatory Information Against Plaintiff

1. Questionable Statement in the Second Affidavit of David Taylor

In the (second) Affidavit of David Taylor (Doc. No. 66), David Taylor of MD Anderson Human Resource stated: "MD Anderson does not share the contents of its official personnel files with prospective employers of former employees of UT MD Anderson."

By this statement, David Taylor either was revealing that MDA is by its policy in violation of the Public Information Act, or he was again giving untrue statements to the Honorable Court about MDA's actual practice, or both. The Office of Attorney General, which has the authority to rule on matters related to the Public Information Act, clearly states that, "The vast majority of information within a public employee's personnel file is considered an open record and accessible to the public", and that, "Under the Public Information Act, public information is available to all members of the public". (Attorney General of Texas, *Public Information Act Made Easy*). Prospective employers are part of the public. Their requests of employment information of a formal employee of MD Anderson's will require MD Anderson to disclose relevant contents in the personnel file of the employee.

If MD Anderson withholds contents of a public employee's personnel file from other employers, as David Taylor claimed, then MD Anderson is in violation of the Public Information Act, which unlawful conduct as a policy of a sophisticated government agency is hard to believe. If this has not been MD Anderson's actual practice, then David Taylor has again made untrue statements under oath to the Court.

2. The banning of rehiring of Plaintiff to the Department of Genetics leads to publication of defamatory information pursuant to Public Information Act.

David Taylor did admit that MD Anderson will, besides confirming the employment of a former employee, also inform prospective employers about a former employee's eligibility of

5

re-hire. The banning of rehiring of Plaintiff to the Department of Genetics therefore could have been, and by law has to be, disclosed to Plaintiff's prospective employers. This is because disclosing that [Plaintiff] "is eligible for re-hire" (Doc. No. 66) without disclosing this same government body's decision of banning the re-hiring of this same former employee to one of its departments, is illegal "selective disclosing of public information". The Public Information Act section 552.007 prohibits a governmental body from selectively disclosing information that is not confidential by law (Attorney General of Texas, *Public Information Made Easy*).

This defamatory information, i.e., the banning of re-hiring Plaintiff, was directly ordered to Human Resource by Defendant Lozano (Doc. No. 62), making MD Anderson legally bound to make this information available to the public, which constitutes publication. Defendant Lozano is therefore personally liable for this publication.

### 3. Other defamatory information available to the public.

Under the Public Information Act, public information is "information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business". (*Texas Government Code,* Section 552). Therefore, Plaintiff's personnel file is not the only document needing investigation with respect to the publication of defamatory information against Plaintiff. Other forms of existing public information "collected, assembled or maintained" by MD Anderson that contains defamatory information against Plaintiff also constitutes publication, due to the fact that they are accessible to the public pursuant to the Public Information Act. In the Fifth Circuit, information is considered published for the purpose of a section 1983 claim "if the information is "likely" to be disseminated to the public" (*Semple, Farrington & Everall, P.C.*, 2013; *Whiting v. Univ. of S. Miss., 451 F.3d 339, 347* (5th Cir. 2006). Any public information by definition is "likely to be disseminated to the public" as it is required by law to be disseminated to the public at request. In this current case these public information includes, but is not limited to, departmental or institutional documentations, personal notes, as well as emails and other communications among Defendants Lozano and Phillips, MD Anderson Human Resource and other administrative or leadership units about the conflict between Plaintiff and Defendants in 2008. Attorney General of Texas states that, "Personal notes are not necessarily excluded from the definition of "public information" and may be subject to the Act." (*Handbook of Public Information Act.*, also See, e.g., Open Records Decision Nos. 635 (1995)). In addition, the Attorney General has repeatedly ruled that email correspondences in personal email accounts

can be subject to the Public Information Act. (See Open Records Letter Nos. 2005-06753 (2005), 2005-01126 (2005), 2003-1890 (2003), 2003-0951(2003)).

Defendant Phillips' email to Dr. Michael Siciliano on October 22, 2008 libeled Plaintiff as "unstable". This email is public information as it was generated/assembled "in connection with the translation of official business" by Defendant Phillips. The existence of this email, and its availability to the public by law, constitutes publication of defamatory information against Plaintiff. Defendant Phillips is therefore directly liable for this publication of defamatory information.

For the same reason, the existence and public availability by law of many other documents that is public information in MD Anderson at the levels of individual officials, department, and institution about Plaintiff also constitute publication. There are much defamatory information against Plaintiff in these documents related to the conflict between Plaintiff and Defendants that are accessible to the public, therefore they are "likely to be disseminated to the public" and constitute publication for the purpose of this Sec. 1983 claim. Most obviously, the police reports Defendant Phillips filed, as cited above. Also, the discussions related to the accusations of Plaintiff among Defendants, the Department of Genetics, MD Anderson Human Resource, and other MD Anderson units also constitute publication due to the fact that they are public information. "Public discussion of accusations against the employee, ...are sufficient to show publication by the government employer." *Putnam*, 332 F.3d at 547. "The government employer's spread of information in connection with an investigation of misconduct is also sufficient to constitute publication". *Gibson v. Caruthersville Sch. Dist.* No. 8, 336 F.3d 768 (8th Cir. 2003).

### IV. Conclusion

In conclusion, Defendants' production of Plaintiff's personnel file may not be true and complete. Therefore, before investigation of its truthfulness, it could not be relied on to determine about publication of defamatory information. In addition, publication of defamatory information should not be limited to information in Plaintiff's personnel file. Any defamatory information against Plaintiff collected, assembled, or maintained in MD Anderso that is public information constitutes publication for the purpose of Plaintiff's claims in this suit, including defamatory information in departmental and institutional documentation and communications, police reports and related documents, personal notes, and emails. Much of these defamatory information was generated/assemble by Defendants Lozano and Phillips personally, therefore

they are personally liable to its publication.

These publications of defamatory information are conducted without any due process. It is therefore established that Defendants Lozano and Phillips have violated Plaintiff's due process rights and deprived her liberty interest. Their qualified immunity is thus defeated and they should be held responsible for any resulting damages to Plaintiff.

## V. PRAYER

**WHEREFORE, PREMISES CONSIDERED, Plaintiff** respectfully request that the Defendants Fifth Motion To Dismiss be NENIED and discovery be permitted to start. Plaintiff further request that she be allowed all other relief, both at law and in equity, to which they may be justly entitled.

Respectfully submitted,

Jingping Xu
PO Box 19104
Houston, TX 77224

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States District Court
Southern District of Texas
FILED

OCT   8 2013

David J. Bradley, Clerk of Court

JINGPING XU,

      Plaintiff,

v.

                                 Case # 4:10-cv-03711

THE UNIVERSITY OF TEXAS M.D.
ANDERSON CANCER CENTER,
ARLENE PHILLIPS in her individual and
official capacities, and Guillermina Lozano
in her individual and official capacities,

      Defendants.                    JURY TRIAL REQUESTED

## PLAINTIFF'S NOTICE OF OBJECTION TO THE OPPOSING COUNSELS' FURTHER REPRESENTATION OF DEFENDANTS DUE TO CONFLICT OF INTEREST

      COMES NOW Plaintiff and respectfully files with the Court this her Notice of Objection to the Opposing Counsels' Further Representation of Defendants Due to Conflict of Interest, and provides the following for the consideration of the Court.

### BACKGROUND

      On September 6, 2013, Plaintiff made a request to The University of Texas MD Anderson Cancer Center (MD Anderson) seeking access to the following information pursuant to the Public Information Act, Texas Government Code Chapter 552:

              "Please provide all police reports filed by Arlene Phillips and Guillamina Lozano in 2007, 2008, 2009, as well as relevant materials."

Arlene Phillips and Guillamina Lozano are the two individual Defendants of this cause.

      On September 19, 2013, Plaintiff received an email from MD Anderson's Vice President and Chief Financial Officer, Mr. Dwain Morres advising Plaintiff that MD Anderson would seek a statutory exceptions from the Office of Attorney General on Plaintiff's request for the public records.

      In a brief to the Attorney General and his office on September 26, 2013 regarding its request for an exception denying Plaintiff's access to the public information, MD Anderson stated, "the responsive information could be used by [plaintiff] in an attempt to bolster her claims (in the lawsuit)."

## OBJECTION

The Public Information Act Texas Government Code Chapter 552 gives the Attorney General and his office the authority to rule on this request for an Public Information Act exception. However, the Attorney General and a number of attorneys in the Office of Attorney General are also Defendants' lawyers of this particular lawsuit. A clear conflict of interest exists in this situation.

The American Bar Association Rule 1.7 states, "A concurrent conflict of interest exists if...(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

The authority of the Attorney General and his office for ruling on Defendants' Public Information Act exception requests presents a significant risk that the representation of Defendants by the Attorney General and attorneys from his office will be materially limited by these attorneys' responsibilities (a fair and unbiased ruling on the exception) to "a third person", the Plaintiff of this cause; at the same time, representation of Defendants by the Attorney General, and any other attorney in his office, presents a significant risk that these attorneys' responsibilities to Plaintiff of a fair and unbiased ruling on any Defendants' exception request, current or future, related to this Cause will be materially limited. Therefore, a concurrent conflict of interest is involved.

The America Bar Association Rule 1.7 requires that, "...a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."

Plaintiff hereby objects that the Attorney General and any attorney from his office continue to represent Defendants of this cause, and files this Notice of Objection with the Court.

In addition, the issues in this Cause that the Court has not ruled on only pertain to the individual Defendants on their individual capacities. The individual Defendants should secure their own private attorneys, or represent themselves, in stead of continuing to use state attorneys on public funding to defend them in their individual capacities.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests that this Honorable Court **DENY** the eligibility of the Attorney General and any attorneys in his office to continue representing Defendants.

Respectfully submitted,

Jingping Xu
PO Box 19104
Houston, TX 77224



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

OCT 9 2013

David J. Bradley, Clerk of Court

JINGPING XU,

      Plaintiff,

v.

THE UNIVERSITY OF TEXAS M.D.
ANDERSON CANCER CENTER,
ARLENE PHILLIPS in her individual and
official capacities, and Guillermina Lozano
in her individual and official capacities,

      Defendants.

<u>Case # 4:10-cv-03711</u>

**JURY TRIAL REQUESTED**

## <u>PLAINTIFF'S NOTICE OF OBJECTION TO THE OPPOSING COUNSEL'S TESTIMONY WITHOUT FIRST HAND INFORMATION</u>

TO THE HONORABLE KEITH P. ELLISON:

      In the hearing of this Cause on August 21, 2013, Mr. Jason T. Contreras, Counsel for Defendants, made statements and arguments for Defendants for the entire hearing without first hand information. In describing the events in dispute, he frequently used phrases such as, "We tried to...", "We [did]..." as if he had been a participants of the events in the 2008 dispute between Plaintiff and Defendants. However, he had no first hand information in any of the events. His information concerning these events was second hand, presumably from Defendants, who had made numerous untrue statements even under oath in their Affidavits, therefore was unreliable.

      As Such, Mr. Contreras' testimony in Court on August 21, 2031, and in Defendants' other fileings to the Court, contain many inaccurate, incorrect, or intentional misleading information.

      As an example, a major claim of Defendants' was there there was no agreements for Plaintiff to go on to MD Anderson property to finish research work at Dr. Siciliano's lab. This became the key information misleading the Honorable Court by creating a major confusion of "how a government official could get into a habit of calling the Police on an employe". Instead of enlightening the Court the true nature of such a habit, that there were indeed such agreements giving legitimacy to Plaintiff's visits after October 8, 2008 but Defendants used the Police in their retaliation against Plaintiff's grievance, Mr. Contreras went further in his arguments denying the facts about the agreements, misled the Honorable Court to believe that there might not be agreements despite Dr. Siciliano's letter.

      Plaintiff hereby incorporates Affidavit of Dr. Michael Siciliano (Exhibit A) testifying the

existence of the agreements and other facts related to this Cause, defeating Defendants' claims that there were no such agreements and Plaintiff went to MD Anderson's property after October 8, 2008 "without any legitimate reason", claims to justify their retaliating use of the Police against Plaintiff.

The facts testifying in the Affidavit of Dr. Michael Siciliano, beside affirming the existence of the agreements, also factually demonstrated, the inaccurate, incorrect, or intentional misleading information Defendants and their Counsels have repeatedly provided to the Honorable Court in this Cause.

Besides in the August 21, 2013 hearing, the statements and arguments the opposing counsels have made in other proceedings in this Cause are mostly if not entirely based on second hand information, supported only with unreliable Affidavits. "Statements of counsel in their briefs or argument...are not sufficient for purposes of granting a motion to dismiss or summary judgment." *Trinsey v Pagliaro*, 229 F.Supp. 647 (D.C.Pa. 1964).

Plaintiff hereby objects Defendants' Counsels statements and arguments using second hand information as testimony to support their Motion to Dismiss, and urge the Court to summon Defendants and other individuals with first hand information to testify in the future hearings.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests that this Honorable Court **DENY** the reliability of Defendants' counsels arguments based on second hand information for the purpose of their Motion to Dismiss. Plaintiff further requests this Court grant discovery to uncover reliable information and facts neccesary for the consideration of a Motion to Dismiss.

Respectfully submitted,

Jingping Xu
PO Box 19104
Houston, TX 77224

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

JINGPING XU,

     Plaintiff,

v.

THE UNIVERSITY OF TEXAS M.D.
ANDERSON CANCER CENTER, ARLENE
PHILLIPS in her individual and official
capacities, and GUILLERMINA LOZANO
in her individual and official capacities,

     Defendants.

United States District Court
Southern District of Texas
FILED

AUG 2 ? 2011

David J. Bradley, Clerk of Court

Case # 4:10-cv-03711

United States District Court
Southern District of Texas
FILED

AUG 2 3 2011

David J. Bradley, Clerk of Court

JURY TRIAL REQUESTED

**Plaintiff's Affidavit In Support Of Clerk's Entry Of Default**

STATE OF TEXAS        §
COUNTY OF HARRIS    §

1. I, Jingping Xu, herein further known as Plaintiff, am more than twenty-one (21) years of age and fully competent to testify to the facts stated herein to which I have direct and personal knowledge.

2. I hereby certify that I am the plaintiff in the above cause, and that The University of Texas MD Anderson Cancer Center, Guillermina Lozano, and Arlene Phillips, herein further known as Defendants, were served Plaintiff's Amended Opposition to Defendants' Motion to Dismiss and Plaintiff's Amended Response to Defendants' Motion for Rule 7 Response and Motion for Stay Discovery, both of which the Court treated as Plaintiff's amended complaint, via telecopier on April 27, 2011, which were delivered to Defendants on April 27, 2011 at 3pm.

3. I further certify that Defendants failed to serve an answer or other responsive pleading to

   Plaintiff's amended complaint within 14 days after service as per Rule 15(a)(3) of the

   Federal Rules of Civil Procedure; and no extension was requested or granted.

4. I hereby certify that Defendants were served Plaintiff's Motion for Default Judgment by

   the following method:

5. Plaintiff's Motion for Default Judgment was sent via telecopier on August 5, 2011 and

   was delivered to Defendants on August 5, 2011 at 9pm.

6. The Clerk is herein requested to enter a default against said Defendants, pursuant to Rule

   55(a) of the Federal Rules of Civil Procedure.

FURTHER AFFIANT SAYETH NAUGHT.


Jingping Xu
PO Box 541321, Houston, TX 77254


   SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority on this the
23nd day of August, 2011, to certify which witness my hand and official seal.



[Seal] LEYDY E VENTURA
My Commission Expires
July 27, 2015


Notary Public, State of T E X A S

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JINGPING XU | § | |
|     **Plaintiff** | § | |
| | § | **Civil Action No.:  4:10-CV-3711** |
| **v.** | § | |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| MD ANDERSON CANCER CENTER | § | |
| et al. | § | |
|     **Defendants** | § | |

<u>**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**</u>

Came to be considered Plaintiff's Motion for Default Judgment. In careful consideration of Plaintiff's motion, Defendants' applicable response, and the controlling law, Plaintiff's Motion for Default Judgment is **DENIED**.

SIGNED on this __25th__ day of __August__, 2011.

_[signature]_

1